Learned, P. J.
—This is appeal from the order of the special term reducing an assessment on the relator’s property.
In a recent case of similar character, People ex rel. Warren v. Dolan et al., May, 1887 (10 N. Y. State Rep., 145), we said: “ The question is one of fact, upon which the special term has passed with as full opportunity as we can have. We have, of course, the power to re-examine this question and to reverse the conclusion of the special term. But evidently there should be some strong; reason to make us do this. We may, however, properly inquire whether there was any evidence produced by the relator sufficient to sustain its claim.
The appellants urge that the relator is not entitled to relief because it did not apply to the assessors on the ground of indebtedness. The case of People ex rel. v. Commissioners of Taxes (99 N.Y., 254), was one where the relator had not made the report required by statute and further had not applied to the commissioners of taxes to reduce its valuation during the time prescribed for that purpose. In the present case the relators applied to the assessors to reduce the valuation on the ground that it was too high, and was also unequal compared with other property.
By chapter 224, Laws of 1886, section 1, amending the city" charter, manufacturing corporations in Cohoes are to be assessed and taxed on real and personal property in the *861 same manner as individuals. That is their real estate is to be put down and at its value in one column and in another column the full value of the personal property after deducting the just debts.
In their roll the assessors had valued the personal property of the relators, after deducting their just debts, at $80,000. The relators claimed that this was too high; and claimed that it should be reduced to $30,000. Now inasmuch as by the statute this valuation by the assessors was to be made after deducting just debts it seems to us that the question of the amount of debts of the relator was necessarily involved in the relator’s application to reduce the valuation to $30,000. The statute does not direct the assessors to insert the total value of the personal property, and also the amount of debts, and then to deduct the latter from the former. But they are required to ascertain and insert the balance after making the deduction. If the assessors had desired more specific statements when the relator applied for a reduction they could have called for them. -
The statute of 1880 provides for a review where an assessment is “erroneous by reason of over-valuation or is unequal in that the assessment has been made at a higher proportionate valuation than other real or personal property on the same roll by the same officers.”
It is erroneous then to over-value, even though the same error is committed as to all other property on the roll. It is the right of the owner that his property shall not be valued for more than it is worth. Over-valuation, even if it extends through the roll, injures the owner in respect to the state tax. So it is a ground for relief also if the assessment is unequal—that is, not in proportion to other property on the roll.
The special term found the relator’s assessment to be both erroneous and unequal.
In looking at the testimony as to the erroneousness of the valuation it may be noticed that Disbrow, a witness for the relator and secretary of the corporation, makes a distinction as to the property of the corporation. He says: “The entire personal property owned by said corporation and represented by its capital stock is the machinery used.” And it was in similar language that he applied to the assessors for a reduction. He did not state what the personal property was, but qualified his language by saying that the personal property represented in the capital stock was the machinery used.
Now, we do not see that this machinery is any more represented by the capital stock than are materials on hand or manufactured goods. The question was and is, how *862 much personal property does the corporation own deducting its_ debts? And when the witness, Disbrow, who is the principal witness for the company, is examined as to its property, he gives very unsatisfactory answers. He says he could not tell how much material was storéd in Troy. He could give no proximate idea of the value of manufactured goods in the Troy store-house. In Doyle & North’s he says the value was $103,000, including raw material. He cannot tell the value of goods in process of manufacture and cannot give a proximate idea. He cannot tell the surplus after paying the last dividend. He says the corporation owes not less than $225,000. He will not say that there was not due to the corporation $100,000. He testifies in the gross that, assuming the value of the machinery at $30,000, the value of all the property of the corporation, after deducting debts and liabilities, was not over $65,000. But the value of his estimate is destroyed by his inability to state the values of manufactured goods and of material on hand, and of the debts due to the corporation. And ' since he says that he cannot tell the amount owing to the corporation for goods sold, it is plain that he was lacking in the knowledge necessary to make his estimate one of any worth. If he did not know these facts he could not estimate the value of the relator’s property. In order to make it appear to the court that the valuation was erroneous, it must be shown that it exceeded all the personal property after deducting therefrom the debts. Personal property is defined, 1 R. S., m. p. 388, § 3, and includes moneys, goods, chattels and debts due from solvent debtors.
In order, then, to authorize a reduction of the valuation, made by the assessors, it was necessary to show what the-true value of the personal property was at the time when the roll was made. We have examined the evidence on this point. It seems to be substantially confined to the evidence of Disbrow above mentioned.
And when we look at his testimony we do not find that, he states facts which would justify a determination as to, what was the real value of the relator’s personal property. When the secretary of the corporation cannot tell the value-of manufactured goods at Troy, the value of materials at Troy, the value of goods in process of manufacture, the surplus over the last dividend, or the claims due for goods sold, and there is no other testimony on these points,,it is plain that the real value of the personal property has not been shown. Hence, it is not shown that the assessors valuation was erroneous. This should be affirmatively shown in order to justify the relief demanded.
The failure of proof on this point is also fatal to the other claim, viz: that the valuation is unequal, that is, not in. *863 proportion to that of other personal property. Until it is shown what ratio the valuation of the relator’s property bears to its true value, it is impossible to decide that this ratio differs from the ratio adopted as to other personal property on the roll.
If the relator had shown that it was undervalued ten per cent, and that other corporations were undervalued twenty per cent, then it would" have shown an inequality. But until it shows what ratio its valuation bears to the real value, evidence as to other corporations is of no avail.
Much of the evidence relates to the method pursued by the assessors in making their valuation. But the real question is as to the results. The inquiry is not whether the assessors were careless or were partial. It is whether this relator’s personal property has been valued at more than it was worth, or whether it has been valued higher in proportion to real value than other personal property on the roll. Even if the assessors actually intended to commit a wrong on the relator, that is not enough. Proof must be given that the relator was wronged, and that must be done by proving what the real value of the personal property was.
It is suggested by the relator that the statute of 1886 above cited is unconstitutional. We see no reason to think that the legislature may not provide a mode of assessing manufacturing corporations in one city different from that which prevails elsewhere. The relator also claims by this statute, amending the charter of Cohoes, it would seem that the legislature had intended to express in clear language the mode of assessing manufacturing corporations in that city; and to relieve the assessment from the perplexities of section 3, chapter 456, Laws of 1857, as they are pointed out in People ex rel. v. Comr. Tax (95 N. Y., 554).
The relator claims that the assessors did not follow the rule of assessing property at its full value. Laws 1885, chap. 201, § 1.
The oath attached to the roll and returned in this case is in due form. And it is immaterial that in making their return they used different words and did not repeat the language of their oath.
On examination of this whole case then we are of the opinion that the relator did not show what was the real value of its personal property after deducting just debts at the time of making up the roll; and, therefore, that it did not show that the assessment was erroneous or unequal.
The order should be reversed with costs against relator.
Landon and Williams, JJ., concur.